IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Twee Jonge Gezellen (PTY) Ltd.,** | ) | Case No. 3:04CV7349 |
| | ) | |
| Plaintiff, | ) | Hon. Christopher A. Boyko |
| | ) | Magistrate Judge William H. Baughman, Jr. |
| v. | ) | |
| | ) | |
| **Owens-Illinois, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY SUPPORTING BILL OF COSTS**

After prevailing on their Motion for Summary Judgment, Defendants Owens-Illinois and Owens-Brockway (collectively "Owens") filed their Bill of Costs on November 20, 2006, requesting that this Court tax costs of $92,959.41 against Plaintiff Twee Jonge Gezellen ("Twee").  Owens' request was held in abeyance until after the Sixth Circuit affirmed this Court's judgment in Owens' favor.  Twee has filed an opposition to Owens' request, asking the Court to either deny Owens' Bill of Costs *in toto*, or alternatively to reduce the costs to $45,516.95.  Twee's Opposition is without merit in reviewing the totality of the circumstances. Owens requests that this Court allow it to recover all of the costs identified and documented in Owens' Bill of Costs, as adjusted herein, under authority of Rule 54(d)(1) as the incurred costs were reasonable and necessary to Owens' defense.

As the Court is aware, Owens has also filed a Motion for Compensation (Doc. 211) seeking attorney fees against Twee under the Court's inherent powers for bad faith in the litigation, and also seeking attorney fees against Twee's counsel under 28 U.S.C. § 1927 for maintaining the case long after it was clear that the case was barred by Ohio's two-year statute of limitations.  For the sake of judicial economy, Owens will not here repeat the legal or factual

arguments made in its Motion for Compensation or in its Reply in support of the Motion, but Owens respectfully refers the Court to those memoranda as they provide additional background and information in reply to Twee's Opposition to Owens' Bill of Costs.

**I.     AS THE PREVAILING PARTY, OWENS IS PRESUMPTIVELY ENTITLED TO RECOVER ITS LITIGATION COSTS.**

Rule 54(d)(1) of the Federal Rules of Civil Procedure directs that litigation costs "*shall be allowed as of course to the prevailing party* unless the Court otherwise directs."[1]  In discussing this directive, the Supreme Court has noted that prevailing parties "presumptively will obtain costs" and that "because costs are usually assessed against the losing party, liability for costs is a normal incident of defeat."[2]  Here, where Owens won a summary judgment based on the statute of limitations, it is beyond dispute that Owens is the prevailing party and is thus entitled to recover its costs as a matter "of course."

Owens submits there is no reason to depart from the ordinary course of proceedings, and the Court should decline to exercise its discretion to deny Owens their costs.  The Sixth Circuit holds that the language of Rule 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court."[3]  Here, the burden is on Twee to overcome the presumption that Owens is entitled to recover its costs:

> When an unsuccessful party in the litigation seeks to be excused from the burden of paying costs, it is incumbent upon [them] to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party.[4]

---

[1] Fed. R. Civ. P. 54(d)(1) (emphasis added).

[2] *See Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 (1991).

[3] *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 729 (6th Cir. 1986).

[4] *Pickens v. GLR Constructors, Inc.*, 196 F.R.D. 69, 72 (S.D. Ohio 2000).

And in analyzing an opposition to the taxation of costs, costs should be awarded "unless it would be inequitable under the totality of the circumstances to put the burden of such costs on the losing party."[5]

Twee cannot meet its burden to overcome the presumption that Owens is entitled to recoup its allowable litigation costs. To the contrary, as discussed below – and further articulated in Owens' separately-filed Motion for Compensation and its Reply in support of the Motion[6] – Owens' recovery of its costs under the facts of this case is both equitable and warranted even in the absence of the presumption of recoverability in Owens' favor.

## II. THIS WAS NOT A "CLOSE AND DIFFICULT" CASE.

Twee argues that there are four bases upon which the Court should deny Owens' Bill of Costs *in toto*. Twee's arguments are without merit. Twee first argues that Owens should be barred from recovering any of its costs because this was a "close and difficult" case. Twee is wrong.

A recent opinion from this Court authored by Judge Oliver, *Hartford Financial Services Group, Inc. v. Cleveland Public Library*,[7] contains a thorough discussion of the circumstances in which a case might be considered so "close and difficult" such that a losing party might overcome the presumption that the prevailing party is entitled to recover its costs. In *Hartford*, the court first identified the type of case that might qualify as "close and difficult" for purposes of denying a bill of costs, citing two examples:

- a case that "involved a claim relating to the validity of a patent and counterclaims for patent infringement. *After a lengthy trial*, the court

---

[5] *Pickens*, 196 F.R.D. 69 at 72.

[6] See Owens' Motion for Compensation filed August 15, 2007 (Doc. 211). And Owens' Reply in Support of Motion for Compensation, filed November 6, 2007.

[7] *Hartford Financial Services Group, Inc. v. Cleveland Public Library*, 2007 U.S. Dist. LEXIS 22528 (N.D. Ohio).

> ruled that the defendant's patent was valid, but that there was no infringement by the plaintiff;"[8] and

- a case "where the trial had taken 80 days and there were 43 witnesses, 800 exhibits, 15,000 pages of transcripts, and a 95-page opinion by the district court."[9]

The *Hartford* court then contrasted those two cases with the facts before it and determined that the case before it was not one that was so "close and difficult" to deny the prevailing party's bill of costs. In so holding, the court noted that:

> Many of the issues in this case were decided in Hartford's favor on pretrial motions and only three of CPL's seven counterclaims went to trial. Trial lasted only 20 days, in comparison to 80 days as in the *White* case. Moreover, while this case was lengthy, no novel issues of Ohio law were involved. . . .[10]

Owens submits that Twee's case against Owens falls far short of even the facts of the *Hartford* case in terms of its closeness and difficulty. In *Hartford*, the court found noteworthy the fact that part of the case was decided on pretrial motions as opposed to at trial, and further that the trial lasted "only 20 days"! In this case, the Court disposed of the entire lawsuit on pretrial motion, finding that Twee's claim was barred by the applicable statute of limitations. And as discussed in Owens' Motion for Compensation and in its Reply in Support of Motion for Compensation, triggering the statute of limitations here did not present a novel issue of Ohio law.

To further obviate that this case is not "close and difficult" for purposes of determining whether to deny a bill of costs, Owens calls the Court's attention to *McHugh v. Olympia Entertainment*,[11] where the court discussed a spectrum of "closeness" in this context. On that

---

[8] *See Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528, at page 6, discussing *United States Plywood Corp. v. General Plywood Corp.*, 370 F.2d 500 (6th Cir. 1966) (emphasis added).

[9] *Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528, at page 7, discussing *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986).

[10] *Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528, at page 7.

[11] 37 Fed. Appx. 730, 742 (6th Cir. 2002) (quoting approvingly the lower court).

spectrum, "the extreme slam dunk would be a motion for summary judgment having been granted, and on the other extreme, the perhaps ultimate close case would be a hung jury."[12] Thus here, with Owens prevailing on summary judgment, we have the "extreme slam dunk" and not a "close" case.

Twee's request that this Court deny Owens' costs *in toto* because of the assertion that this was a "close and difficult" case should be rejected. Even if this were a "close and difficult" case, Owens would still be entitled to its costs for the other reasons set forth herein and in Owens' separate Motion for Compensation. That is because the closeness of a case is only one of several factors to be considered and a court does not abuse its discretion by awarding costs even where the case is "close and difficult."[13]

## III. TWEE DID NOT ACT IN GOOD FAITH AND WITH PROPRIETY THROUGHOUT THIS LITIGATION.

Twee next asserts that Owens' Bill of Costs should be denied because they "brought this case in good faith and conducted the litigation with propriety."[14] Twee's argument should be rejected by the Court.

First, "good faith without more . . . is an insufficient basis for denying costs to a prevailing party."[15] If that were the case, then the exception would erode the rule by supporting a denial of costs in every non-frivolous suit that was filed. Clearly this runs counter to the mandate established by Rule 54(d)(1) that costs "shall be allowed as of course to the prevailing party."

---

[12] *Id.*

[13] *See McDonald v. Petree*, 409 F.3d 724, 732 (6th Cir. 2005); see also *Knology, Inc. v. Insight Comm. Co., L.P.*, 460 F.3d 722, 729 (6th Cir. 2006) (denying the assertion that the Sixth Circuit permits the denial of costs "based solely on the closeness or complexity of a case.").

[14] See Plaintiff's Memorandum in Opposition to Defendants' Bill of Costs at p. 5.

[15] *See White & White, Inc.*, 786 F.2d at 731.

5

Second, and most importantly in this case, Twee did not litigate this case in good faith. In fact, as set forth in Owens' Motion for Compensation,[16] Twee and its counsel pursued this litigation unreasonably and vexatiously multiplied the proceedings in this case by:

- continuing to pursue the litigation against Owens after it became apparent during discovery that Twee's lawsuit lacked a plausible factual and legal basis and was legally barred; and

- actively pursued an admittedly-baseless claim that Freon 134a-treated bottles were somehow toxic and contaminated Plaintiff's wines.

As set forth in Owens' Motion for Compensation and in Owens' Reply in Support of Motion for Compensation, Twee pursued the claim regarding contamination and toxicity to humans for the express purpose of gaining leverage inappropriately in this case. In light of all the evidence of Twee's "bad faith," this is certainly not a case in which Twee exhibited the requisite propriety to warrant an exercise of this Court's discretion to deny Owens' Bill of Costs.

## IV. TWEE'S FINANCIAL CIRCUMSTANCES DO NOT JUSTIFY A DENIAL OR REMITTITUR OF COSTS.

The third argument Twee advances to suggest this Court should deny Owens' Bill of Costs *in toto* is that the Court should consider Twee's financial circumstances. Again, established precedent does not support Twee's argument.

As a preliminary matter, "the burden is on the losing party to show that [they are] unable, as a practical matter and as a matter of equity, to pay the defendant's costs."[17] More importantly, in order to even invoke the "inability to pay" factor into the analysis of whether to deny or remit a prevailing party's bill of costs, the losing party must demonstrate not merely that payment

---

[16] *See* Owens' Motion for Compensation (Doc. 211), filed August 15, 2007.

[17] *Tuggles v. Leroy-Sommer, Inc.*, 328 F. Supp.2d 840, 845 (W.D. 10. 2004) (setting *Weaver v. Toombs*, 948 F.2d 1004, 1014 (6th Cir. 1991)).

6

would be a burden, but that they are *indigent*.[18] And a party is only deemed indigent if it is "incapable of paying the court-imposed costs at this time or in the future."[19]

Here, Twee acknowledges in its opposition brief that it *is* capable of paying any court-imposed costs in this case.[20] While admitting it is not indigent, Twee nonetheless posits that they should be relieved of their obligation to pay Owens' costs because Owens has at various times alleged that "Twee Jonge is in precarious financial circumstances."[21] This preposterous argument is further evidence of Twee's continued insistence on advancing baseless claims before this Court.

Indeed, in one of the cases Twee cites in its brief, the court found that although the losing party had filed for bankruptcy and had no assets, taxation of costs were nonetheless appropriate because the losing party had a job and therefore would be able to pay the court-imposed costs at some future date.[22] Because Twee concedes that it is not indigent and is *not* incapable of paying the court-imposed costs in this case, there is no basis for this Court to deny Owens' Bill of Costs based on Twee's financial circumstances.

## V. OWENS' BILL OF COSTS IS NOT "GROSSLY OVERREACHING."

The final ground argued by Twee in support of its suggestion that this Court should deny Owens' Bill of Costs *in toto* is that Owens' cost request is overreaching. Twee's argument is again without merit.

Twee cites only one case for the "proposition" that "gross overreaching" by a prevailing party constitutes potential grounds to deny a bill of costs *in toto*. In that case, *Trohoske v.*

---

[18] *See, e.g., Tuggles*, 328 F. Supp.2d at 854 (citing *Reed v. Int'l. Union*, 945 F.2d 198, 204 (7th Cir. 1991)).

[19] *See, Tuggles*, 328 F. Supp.2d at 845 (citing *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)).

[20] *See* Plaintiff's Memorandum in Opposition to Defendants' Bill of Costs at p. 7.

[21] *See* Plaintiff's Memorandum in Opposition to Defendants' Bill of Costs at p. 7.

[22] *See Tuggles*, 328 F. Supp.2d at 846.

*McDonogh Power Equip. Co.*,[23] the party requesting costs sought reimbursement for "airfare, meals and lodging" among other non-recoverable expenses. The court found the requests for "airfare, meals and lodging" to be particularly "absurd and unconscionable."[24] In this matter, Owens has sought no such "absurd" expenses and there is no basis or precedent to support Twee's position that Owens has overreached in a manner that would justify a denial of costs *in toto*. To the contrary, as set forth herein and documented in Owens' Bill of Costs, the costs sought by Owens are reasonable and necessary as contemplated by Rule 54(d)(1). Moreover, even if certain of the costs claimed by Owens are deemed "unnecessary," requesting some "unnecessary" costs is "not a reason for denying all costs."[25]

## VI.  TWEE'S OBJECTIONS TO SPECIFIC ITEMS IN OWENS' COST BILL ARE NOT WELL TAKEN.

Twee asks the Court to reduce Owens' $92,959.11 Bill of Costs by $47,442.46 and make an award of $45,516.95. Twee's proposed deduction of $47,442.46 has three components: (1) a $26,885.15 deduction for copy charges; (2) a $19,865.95 deduction for various expenses that Twee calls "overhead and convenience of counsel" charges; and (3) a $691.32 deduction for *de bene esse* depositions.

Twee's objections lack merit. Owens' response to each of these items is as follows:

### A.  Copy Charges.

Owens' Bill of Costs and attached exhibits (Doc. 207) and the affidavit of Diana Dow[26] show that Owens spent $31,885.15 on copy charges; and that of this amount, $18,362.13 was spent on copies by outside vendors used by Owens' California counsel; that $5,869.02 was spent

---

[23] 118 F.R.D. 425 (W.D. Penn. 1988).

[24] *See Trohoske*, 118 F.R.D. 425, at 426.

[25] *White & White, Inc.*, 786 F. 2d at 731.

[26] Ex. 1, filed herewith, Affidavit of Diana Dow.

8

on copies by outside vendors by Owens' Ohio counsel; and that Owens' Ohio counsel spent an additional $7,654.00 for copies made in the office.[27] Schedule A attached to the Dow Affidavit shows a description of the outside vendors' charges.[28]

Owens made a total of 215,679 copies; and of this amount, 145,025 copies were made by the outside vendors in Ohio and California; and Owens' Ohio counsel made 70,654 copies in the office.[29]

Additional costs included in the outside vendor costs were $4,253.23 for scanning documents and adding electronic Bates numbers to documents that were copied from CDs; and this represented approximately 22,732 pages.[30]

Owens accounts for the 215,679 copies as follows:

- The total number of documents produced by both parties in discovery totaled 57,278. Owens made two sets of these documents, one for Ohio counsel and one for California counsel, for a total of 114,556 copies.[31]

- Owens produced four sets of trial exhibits, a total of 16,788 pages.[32] Owens made one set for the Court, one for the witness, and two sets for counsel.

- At the request of Twee's counsel, Owens also copied all of its 14 expert-witness reports and the documents relied upon by the experts, a total of approximately 22,634 pages, and produced the copies to Twee's counsel.[33]

---

[27] *Id.* at ¶ 3.

[28] *Id.* at ¶ 2.

[29] *Id.* at ¶¶ 4a.

[30] *Id.* at ¶ 4c.

[31] *Id.* at ¶ 4b. Twee cites *Pickett v. Tyson Fresh Meats*, 2004 U.S. Dist. LEXIS 29389 at *21 (M.D. Ala. Aug. 3, 2004) for the proposition that if a party produces documents in CD format that the receiving party may only make one copy of the CD. But Twee mis-cites *Pickett*, which in fact held (at page 6) that if a party produces its "trial exhibits" in CD format, the receiving party can only recover the cost of printing one "trial exhibit." Here, Twee produced most all of its discovery in CD format and Owens had counsel in California and Ohio, each of whom had certain responsibilities, and two copies were necessary.

[32] *Id.* at ¶ 4i.

[33] Ex. 2, filed herewith, Affidavit of James R. Balich, at ¶ 9.

9

- Owens California counsel made 10,500 copies of selected documents produced by Twee, key deposition transcripts, and Plaintiff's expert reports and files, and furnished the copies to Owens' experts for review and consideration in their review of the issues.[34] Owens' Ohio counsel furnished an additional 2,300 copies to one of Owens' experts.[35]

- Owens made additional copies of documents used as deposition exhibits. There were 308 deposition exhibits.[36] Owens typically made four sets of the exhibits – two sets for Owens' counsel, one set for Twee's counsel, and one set for the witness (which was marked as the deposition exhibits.[37] Owens cannot state with certainty how many copies of deposition exhibits were in fact made but reasonably estimates the number at 1,232 (four sets x 308 exhibits). The actual number was probably higher because several documents were copied for use as exhibits but were not in fact used as exhibits.

- Owens made copies of selected documents produced by both parties, and key deposition transcripts, which were furnished to and used to prepare witnesses for depositions. Owens does not know the exact number of documents that were copied for this purpose but estimates the number at approximately 12,000. For example, three 12" x 15" bankers' boxes full of documents were provided to Bob Clark for his review. Depending upon the number of paperclips, staples and binders used, a bankers box may contain from 2,800 documents to 3,200 documents, more of less. Thus, Bob Clark was furnished with approximately 9,000 pages of documents in order to prepare for his deposition. Owens had a total of 11 fact witnesses, all of whom were furnished copies of some documents. Counsel believes its estimate of 12,000 documents total for use by witnesses is very reasonable.

- Recapitulation of copies:

    Total copies made ............................................................................215,679

    Copies for Owens' counsel ......................................114,556

    Copies for trial exhibits..............................................16,788

    Copy of expert documents to Twee ...........................22,634

    Copies to Owens' experts ..........................................12,800

---

[34] *Id.* at ¶ 6.

[35] Ex. 1, Dow Aff., at ¶ 4h.

[36] Ex. 1, Dow Aff., at ¶ 4f.

[37] Local Rule 30.1(b)(6) requires counsel to provide a copy of each exhibit to the deponent's counsel.

10

      Deposition exhibits (estimate) .......................................1,232

      Copies for witness preparation (estimate)...................12,000

      Total accounted for ..................................................<u>180,010</u>

      Copies not specifically accounted for ................................................35,669

Included in this number (35,669) of unaccounted for copies are 7,711 copies that Owens furnished to Allan Greyling. But Owens withdrew Greyling as an expert witness and accordingly, these 7,711 copies should not be included in Owens' cost bill. Thus, Owens will withdraw $925.32 (7,711 copies x .12¢ per copy [average charge] = $925.32). Thus, the unaccounted for number of copies is reduced to 27,958 (35,669 – 7,711 = 27,958).

Although Owens used all of the copies in its defense of the case, Owens cannot say with certainty that none of the unaccounted for 27,958 copies were not for the convenience of counsel. Accordingly, for purposes of helping to resolve this issue, Owens will concede for purposes of this Motion that 20% of the unaccounted for documents may be deducted from its cost bill.[38] And this amounts to $642.19 (.20 x 26,758 = 5,592 copies x .12¢ per page [average charge] = $642.19). Thus, Owens agrees that its copy charge may be adjusted down by $1,596.36.

      **B.     So-Called "Overhead and Convenience of Counsel" Items.**

Twee asserts that the Court should deduct $19,865.95 for various so-called "overhead and convenience of counsel" items. Twee lists these items at pages 12-13 of its Memorandum opposing the cost bill.

First, the Bates-labeling item is included in the $18,362.13 item under copies made by the outside vendor in California and were necessary to keep track of the documents.[39] The scanning

---

[38] In *Rice v. Express, Inc.*, 237 F. Supp.2d 962, 981 (N.D. Ind. 2002), the court reduced the parties' unaccounted for copies by 20% to account for the possibility that some were made for the convenience of counsel.

[39] *See* Ex. 1, Dow Aff. at ¶ 4c.

11

charges were to scan documents produced to Twee in electronic form.[40] The five-day turnaround fees and the ASCIII disks were requested by counsel in order to obtain the depositions as soon as possible in order to prepare papers for filing with the Court or continuing depositions. The VHS/CD conversion charge was to prepare documents that could be used at trial for jury presentation. The balance of the charges on the list were charged by court reporters in providing their services in connection with the depositions.[41]

### C. *De Bene Esse* Depositions.

Twee asserts that the Court should reduce the cost of the *de bene esse* depositions from $1,382.64 to $691.32, contending that the depositions of Peter Fleck, Michael Graham, Andre Van Wyk and Allan Greyling, taken in South Africa, were not intended as *de bene esse* depositions but were simply fishing expeditions by Owens.[42] Contrary to Twee's unsupported contentions, however, Owens took the depositions of Peter Fleck, Michael Graham and Andre Van Wyk with the specific purpose of using them at trial to refute factual assertions made by Twee.[43] Allan Greyling had interviewed these witnesses at Owens' request, and Owens' counsel had telephone conversations with the witnesses before the depositions were taken.[44]

The Allan Greyling deposition had a dual purpose: (1) as a *de bene esse* deposition for the narrow purpose of showing that he made an effort on behalf of Owens to obtain Twee's financial papers from Deloitte & Touche in South Africa; and (2) to make a record of events that occurred in South Africa involving two of the scheduled *de bene esse* deponents. After arriving

---

[40] See Ex. 1, Dow Aff., at ¶¶ 4c, 6.

[41] *See* Ex. 1, Dow Aff., at ¶ 8.

[42] Plaintiff's Memorandum (Doc. 217) at 13-15.

[43] *See* Defendants' Response to Plaintiff's Expedited Motion to Exclude Testimony (Doc. 193) discussing these *de bene esse* depositions, and the Allan Greyling deposition.

[44] *See* Defendants' Response to Plaintiff's Expedited Motion to Exclude Testimony (Doc. 193) at 9, and Affidavit if Cary Rodman Cooper, attached to Defendants' Response (Doc. 193).

in South Africa, Twee's counsel spoke with the *de bene esse* deponents and told them that they were not under the subpoena power of the Court and they were free to make their own decisions about whether they should appear for the depositions or not.[45] After talking to Twee's counsel, two of the previously-scheduled witnesses changed their minds and refused to testify. Because the Greyling deposition was taken to make a record as to why two *de bene esse* deponents changed their mind and refused to testify in South Africa, Twee should also be required to pay for the costs of Allan Greyling's deposition.

The Court should not reduce the costs of the *de bene esse* depositions that are part of Owens' Bill of Costs.

### VII. VOLUNTARY ADJUSTMENT TO BILL OF COSTS.

As noted above, Owens agrees to reduce its copying charges by $1,596.36.

Owens also agrees to deduct an additional $2,569.31 from its Bill of Costs. This amount represents charges by the copy vendors to provide services or products that Owens' counsel could incorporate into litigation management software and should not have been included in Owens' cost bill. The amount, $2,569.31, shows up on the vendors' invoices as reflected on Schedule A to the Dow Affidavit, Ex. 1, on page 1 (two items, one for $273.96 and the other for $102.00) and on page 4 (one item for $2,193.35). Although Twee has not objected to these specific items, Owens removes them for its Bill of Costs.

- Recapitulation of Bill of Costs:

    Amount of Bill of Costs ............................................................. $92,959.41

    Adjustments:

    Copies ....................................................... $1,596.36

    Litigation software .................................... $2,569.31

---

[45] *See* Defendants' Response to Plaintiff's Expedited Motion to Exclude Testimony (Doc. 193) at 2-5.

    Total adjustments......................................$4,165.67

  Adjusted Bill of Costs..............................................................$88,793.74

**VIII. CONCLUSION.**

  For the foregoing reasons, Owens requests that the Court allow its Bill of Costs in the amount of $88,793.74.

DATED: November 6, 2007          Respectfully submitted,

                /s/ Cary Rodman Cooper
                Cary Rodman Cooper
                COOPER & WALINSKI, LPA
                900 Adams Street
                Toledo, Ohio 43624
                PH: (419) 241-1200
                FAX: (419) 242-5675
                cooper@coopewalinski.com

                /s/ James R. Balich
                James R. Balich
                SCHIFF HARDIN LLP
                One Market Street
                Spear Tower, 32nd Floor
                San Francisco, California 94105
                PH: (415) 901-8700
                FAX: (415) 901-8701 or 8751
                jbalich@schiffhardin.com

                *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing was served electronically this 6th day of November, 2007 upon all counsel of record. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. The parties may access this filing through the Court's Electronic Case Filing System.

                /s/ Cary Rodman Cooper
                Cary Rodman Cooper