IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TWEE JONGE GEZELLEN (PTY) LTD., ) | | CASE NO. 3:04 CV 7349 |
| ) | | |
| Plaintiff, ) | | JUDGE CHRISTOPHER A. BOYKO |
| ) | | |
| v. ) | | MAGISTRATE JUDGE |
| ) | | WILLIAM H. BAUGHMAN, JR. |
| OWENS-ILLINOIS, *et al.*, ) | | |
| ) | | **REPORT & RECOMMENDATION** |
| Defendants. ) | | |

## Introduction

District Judge Christopher A. Boyko has referred[1] this case to me for a report and recommendation on the motion of defendants for compensation of excess costs, expenses, and attorneys' fees under 28 U.S.C. § 1927.[2]

In this case the plaintiff, Twee Jonge Gezellen Ltd., a wine producer and bottler, brought an action claiming that the defendants negligently provided erroneous advice to its bottle supplier causing the ruination of a substantial quantity of sparkling wine.[3] Judge Boyko granted summary judgment in favor of the defendants on the ground that

---

[1] ECF # 221.

[2] ECF # 211.

[3] ECF # 1 at ¶s 1, 2.

Twee's claim was barred by the two-year statute of limitations in Ohio Revised Code § 2305.10.[4]  On appeal the Sixth Circuit affirmed on that same ground.[5]

In their motion the defendants accuse Twee and its attorneys of unreasonably and vexatiously multiplying proceedings in two respects:

- "Twee continued to pursue the litigation against Owens after it became apparent during discovery that Twee's lawsuit lacked a plausible factual and legal basis and was legally barred; and

- "for over six months, Twee actively pursued an admittedly-baseless claim that Freon 134a-treated bottles were somehow toxic to humans."[6]

Twee has opposed the motion,[7] and the defendants have filed a reply.[8]

For the reasons more fully explained below, I recommend the denial of defendants' motion for compensation.

### Relevant Proceedings

The relevant background facts are set forth in this Court's decision granting summary judgment[9] and in the Sixth Circuit's decision affirming the judgment.[10]  I cannot improve upon these recitations written by judges who immersed themselves in the facts and law in the

---

[4] ECF # 203.

[5] ECF # 209.

[6] ECF # 211 at 1.

[7] ECF # 218.

[8] ECF # 224.

[9] ECF # 203.

[10] ECF # 209.

process of reaching their dispositions.  I, therefore, incorporate them by reference here.  I will discuss specific facts, filings, and rulings in the course of setting out the analysis in support of my recommendation.

## Analysis

### 1.    The timeliness of the motion for compensation

Judge Boyko granted summary judgment in favor of the defendants on August 16, 2006,[11] and entered a separate judgment on that date.[12]  Twee timely filed a notice of appeal to the Sixth Circuit on September 12, 2006.[13]

While that appeal still pended, the defendants filed a bill of costs on November 20, 2006,[14] which this Court ordered held in abeyance pending a decision on appeal.[15]

On July 26, 2007, the Sixth Circuit filed its decision affirming the judgment.[16]  On August 15, 2007, the defendants filed a motion to activate the bill of costs[17] and the motion for compensation.[18]  Twee argues that the motion for compensation is untimely because it

---

[11] ECF # 203.

[12] ECF # 204.

[13] ECF # 205.

[14] ECF # 207.

[15] Non-document entry of November 20, 2006.

[16] ECF # 209.

[17] ECF # 210.

[18] ECF # 211.

should have been filed after this Court's summary judgment in time for a decision on that motion to be appealed and considered with the appeal from the grant of summary judgment.

There is no time limit on the filing of motions under 28 U.S.C. § 1927 by statute or rule. Section 1927 itself contains no time limit. Federal Rule of Civil Procedure 54(d)(2) does impose a time limit of 14 days after the entry of judgment on certain motions for attorneys' fees. Rule 54(d)(2)(E) expressly exempts motions under 28 U.S.C. § 1927 from that time limitation, however.

Subdivision (d) to Rule 54 was added by amendment in 1993. Why motions under § 1927 were exempted from the time limitation in subdivision (d)(2) is unclear. The justifications given by the Advisory Committee for the time limitation apply with equal force to motions under § 1927 and those to which the rule does apply, such as motions under 42 U.S.C. § 1988.

> One purpose of this provision [Rule 54(d)(2)(B)] is to assure that the opposing party is informed of the claim before the time for appeal has elapsed. ****
>
> Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.[19]

Civil Rule 54(d)(2)(E) does not resolve the timeliness issue here, however. The 1993 amendments to the Rule were enacted in response to the suggestion made by the Supreme Court in *White v. New Hampshire Department of Employment Security*.[20] The *White* decision

---

[19] Fed. R. Civ. Proc. 54(d)(2)(B) Advisory Committee's note to the 1993 amendments.

[20] *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445 (1982).

resolved the issue of whether motions for attorneys' fees were subject to the 10-day limit for post-trial motions under Federal Rule of Civil Procedure 59(e).  The Court decided that they are not.[21]  Rather, whether a motion for attorneys' fees is timely is a matter for the trial court's discretion guided by certain considerations:

> We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises **or** prejudices the affected party. Moreover, the district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorneys' fees and of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims for attorneys' fees.  Such practice will normally permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits.[22]

Rule 54(d)(2)(B) is in response to the foregoing recommendation to set timeliness standards for the filing of claims for attorneys' fees by rule.

As Moore's Federal Practice notes, because Rule 54(d)(2) "leaves undisturbed the time limitation for seeking fees" under § 1927, "the issue is left to prior law, including the Supreme Court's holding [in *White*] that a fee motion is not required to be brought within any particular time, but must only be reasonably prompt."[23]  The treatise also states that a district court by local rule could provide a time limitation on the filing of motions for sanctions exempted by Rule 54(d)(2)(E) from the 14-day limitation in 54(d)(2)(B) without conflicting

---

[21] *Id.* at 452.

[22] *Id.* at 455 (emphasis added).

[23] 10 James Wm. Moore, *et al.*, Moore's Federal Practice § 54.15[2][c], at 54-220.1-220.2 (3rd ed. 2007).

with the national rule.[24]  As exemplified by this motion and by this discussion, the Northern District of Ohio should seriously consider the adoption of such a local rule.

The Sixth Circuit discussed and implemented the reasonable time requirements for timeliness of the filing of § 1927 motions in *In re Ruben*.[25]  In that decision, the court emphasized that the trial court's discretion in assessing timeliness should be guided by whether the non-movant was surprised by the motion in light of the course of discovery and trial proceedings, whether the motion will result in piecemeal appeals, and whether the filing caused prejudice in terms of a change of position or detrimental reliance upon the failure to file earlier.[26]  As previously discussed, the Supreme Court identified these same factors in its *White* decision.[27]

Applying these standards here, I conclude that the balance tips against the exercise of discretion to entertain the filing, which comes after the Sixth Circuit has reviewed the decision in this case.  First and foremost, this motion will result in piecemeal appeals.  Had the defendants filed the motion shortly after the decision to grant summary judgment, Judge Boyko could have ruled on the motion, and the Sixth Circuit could have decided both the merits of the appeal and any challenge to a fee decision in a consolidated proceeding. Rather, contrary to the Sixth Circuit's admonition in *In re Ruben*, this Court is being asked

---

[24] *Id.* at § 54.151[2][b], at 54-220.1.

[25] *In re Ruben*, 825 F.2d 977, 981-82 (6th Cir. 1987).

[26] *Id.* at 982.

[27] *White*, 455 U.S. at 454.

to reconstruct the case previously reviewed in detail, and the Sixth Circuit will be asked to do the same.  This task would have consumed substantially less of this Court's and the Sixth Circuit's time and resources had the defendants brought the motion seasonably after the granting of summary judgment.

The proceedings here suffer unfavorably by comparison with those in *Patterson v. United Steel Workers*.[28]  There, as here, District Judge Katz granted summary judgment.[29]  Within 14 days, the prevailing party filed a motion for fees under 28 U.S.C. § 1927.[30]  Judge Katz issued a ruling denying the motion within 30 days.[31]  Although the losing party, plaintiff Patterson, did not take an appeal in that case, had he chosen to do so, the Sixth Circuit would have reviewed the fee ruling and the grant of summary judgment in a single consolidated proceeding.[32]  Furthermore, the promptness of the filing of the motion for fees after the decision on summary judgment undoubtedly assisted Judge Katz in promptly reviewing the motion while the facts and law applicable to the summary judgment decision remained fresh in his mind.

---

[28] *Patterson v. United Steel Workers*, 381 F. Supp. 2d 718 (N.D. Ohio 2005).

[29] Case No. 3:04cv7019, ECF # 58.

[30] *Id.*, ECF # 61.

[31] *Id.*, ECF # 64.

[32] *See*, *e.g.*, *Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007), in which the Sixth Circuit considered the appeal from the decision on the underlying claims and an appeal from the denial of fees under § 1927 in a single, consolidated proceeding.

In enforcing a local rule imposing a time limitation on motions for award of attorneys'
fees in *Schake v. Colt Industries Operating Corporation Severance Plan*, the Third Circuit
admonished that "[a] fundamental principle of justice is that a case must come to an end...."[33]
It cautioned that a case should not be "protracted interminably" or judicial resources be taxed
unnecessarily by protracted disputes over fees.[34]  Here, the defendants have provided no
reason why they did not file their motion at a time that would have avoided piecemeal
appeals.  From my review of Judge Boyko's decision, and that of the Sixth Circuit, I have
found nothing in the latter that changed the legal landscape upon which this fee dispute is
being fought.  Accordingly, the consideration of filing the motion in time to avoid piecemeal
appeals weighs heavily against the defendants.

I have found little in the precedents fleshing out of the surprise consideration in the
*White*/*In re Ruben* equation.  The court in *Ruben* makes reference to whether the non-movant
should have been surprised in light of the course of the discovery and trial proceedings.
From my review of the parties' briefs and the docket sheet in this case, I have discovered
nothing suggesting that the defendants threatened to seek attorneys' fees in advance of the
motion first filed after the decision on appeal.  The docket sheet reflects no significant
discovery disputes and no motions for sanctions under Civil Rules 11 or 37.  Although the
defendants insist that they made their intentions to seek summary judgment on
statute-of-limitations grounds known early and often, this is typical of many cases.  In my

---

[33]  *Schake v. Colt Indus. Operating Corp. Severance Plan*, 960 F.2d 1187, 1193 (3rd Cir. 1992).

[34]  *Id.*

experience, trial counsel defending against claims normally advise the court at case management conferences, status conferences, mediations, and settlement conferences, of an intent to file dispositive motions, with representations that such motions have overwhelming support in the law and the facts.  Such representations, therefore, do not provide the foundation for negating the surprise referred to in the *White* and *In re Ruben* decisions.

In a real sense, motions for sanctions under 28 U.S.C. § 1927 are somewhat unique among the sanction motions outside the time limitations of Civil Rule 54(d)(2)(B).  Under Civil Rule 11, to recover sanctions, the moving party must be offered the opportunity to withdraw or correct the challenged paper, claim, defense, contention, allegation, or denial before the court will entertain the motion.[35]  Civil Rule 37(d) requires the parties to confer or attempt to confer before seeking court resolution of certain discovery disputes and sanctions related to such disputes.  And Local Civil Rule 37.1 requires the parties to make a sincere, good faith effort to resolve any discovery dispute before coming to the Court for a resolution.  These provisions eliminate the potential for surprise when a party seeks sanctions under Rule 11 or Rule 37.  Section 1927 contains no similar requirement that the parties attempt to avoid the problem that may result in sanctions.  The surprise consideration, therefore, figures more prominently in the context of § 1927 motions than with respect to other sanction motions within Civil Rule 54(b)(2)(E).

Finally, with respect to prejudice, I do not find that Twee changed its position or detrimentally relied upon defendants' delay in filing the motion for compensation – the

---

[35] Fed. R. Civ. Proc. 11(c)(1)(A).

prejudice formulation referred to in *In re Ruben*.[36]  Nevertheless, the parties, this Court, and the Sixth Circuit have or will be disadvantaged by this belated filing.  Both sides undoubtedly incurred additional fees and expenses because the motion required their counsel to retrospectively review the record and the law in this case to put together the motion and the opposition.  Counsel could have completed these tasks more expeditiously if the work was done contemporaneous with this Court's decision on summary judgment and the subsequent appeal.  As previously stated, after the passage of more than a year since this Court granted summary judgment, it has now been called upon to revisit this case and reevaluate matters once fresh and now distant.  The Sixth Circuit will be similarly disadvantaged, and even more so if the same panel that heard the appeal from the summary judgment decision is not assigned to an appeal from the ruling on this motion.[37]  Accordingly, although actual prejudice may not exist, this filing has nevertheless generated adverse effects that cannot be totally ignored in the timeliness consideration.

On balance, the factors applicable to the requirement that § 1927 motions be filed with reasonable promptness substantially weigh against the defendants, and the motion should be denied as untimely.

For sake of completeness, this report and recommendation will proceed to discuss whether the sanctions sought by the defendants are warranted, timeliness aside.

---

[36] *In re Ruben*, 825 F.2d at 982.

[37] Under the Internal Operating Procedures of the Sixth Circuit, it is not a foregone conclusion that any appeal from the District Court's decision on this motion will be assigned to the same panel.  6 Cir. I.O.P. 34(b)(2).

2.      **The decision to continue the litigation in the face of defendants'
statute-of-limitations defense**

Defendants seek an award of attorneys' fees under § 1927 on the ground that Twee's

counsel "unreasonably and vexatiously" multiplied the proceedings in this case by continuing

the litigation despite the disclosure of certain facts that this Court ultimately found

dispositive of defendants' statute-of-limitations defense.

In *Salkil v. Mount Sterling Township Police Department*,[38] the Sixth Circuit succinctly

summarized the standards that apply to the discretionary decision to award or deny fees

under § 1927.

> Section 1927 imposes an objective standard of conduct on attorneys, and the
> courts need not made a finding of subjective bad faith before assessing
> monetary sanctions under § 1927.  Instead, a district court may impose
> sanctions under § 1927 when it determines that "'an attorney reasonably
> should know that a claim pursued is frivolous.'"  Simple inadvertence or
> negligence, however, will not support sanctions under § 1927.  "'There must
> be some conduct on the part of the subject attorney that trial judges, applying
> collective wisdom of their experience on the bench could agree fall short of the
> obligations owed by members of the bar to the court.'"[39]

A district court should avoid using hindsight and should test counsel's conduct by the

standard of what was reasonable to believe at the time counsel undertook that conduct.[40]

---

[38] *Salkil v. Mount Sterling Township Police Dep't*, 458 F.3d 520 (6th Cir. 2006)
(citations omitted).

[39] *Id.* at 532.

[40] *Id.* at 530.

-11-

Sanctions under § 1927 should be reserved for extreme cases and be awarded with great caution.[41]

An award of fees as a sanction under § 1927 is discretionary with the Court,[42] and is reviewable under the abuse of discretion standard.[43]  Regarding abuse of discretion, as one jurist has observed:

> Abuse of discretion is a "verbal coat ... of many colors."  Accordingly, legal scholars attempting to define abuse of discretion after extensive rhetoric often come to the conclusion that no better definition exists than Judge Stewart's definition of pornography, you know it when you see it.[44]

Although, as the Sixth Circuit stated in *Salkil*, the § 1927 decision should be guided by the collective wisdom of the experience of trial judges on the bench,[45] that decision ultimately requires the trial court to make the kind of call referred to by Justice Stewart in the pornography context.  Twee's counsel's choice to pursue the claims despite the disclosure of facts that ultimately carried the day in favor of the defendants was not, as I gauge the guiding, "collective wisdom," unreasonable and vexatious conduct.

---

[41] *Root Bros. Farms v. Mak*, No. 05CIV10863, 2007 WL 2789481, *6 (S.D.N.Y., Sept. 25, 2007).

[42] *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986); *Legair v. Circuit City Stores, Inc.*, No. 2:01cv985, 2006 WL 278405, *1 (S.D. Ohio, Feb. 3, 2006).

[43] *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001).

[44] *PPG Indus. v. Celonese Polymer Specialties Co.*, 840 F.2d 1565, 1570-71 (Fed. Cir. 1988) (Bissell, J., additional views) (citations omitted). Justice Stewart's observations appear in *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

[45] *Salkil*, 458 F.3d at 532.

Judge Boyko concluded that Twee's knowledge in 1998 that the damage to its wine had been caused by its bottle supplier's use of Freon 134a, with the advice and consultation of defendants, was sufficient to trigger the running of the statute of limitations.[46]  The Sixth Circuit agreed with that analysis.[47]

The defendants argue that through discovery the facts upon which this Court and the Sixth Circuit relied in ruling in their favor became obvious and undisputed by November of 2005, and Twee's attorney should have voluntarily dismissed the litigation at that time.[48] Twee counters that although it knew of the injury, the cause, and defendants' general involvement with Twee's bottle supplier in 1998, defendants' wrongful conduct – the negligence in providing erroneous advice to the bottle supplier – did not come to light until discovery in litigation in South Africa in 2002.[49]  Twee submits that under Ohio law, it had and made a colorable argument that the statute of limitations did not begin to run until 2002.[50]

In support of its position on the statute of limitations, Twee relied on the opinion of the Supreme Court of Ohio in *Norgard v. Brush Wellman, Inc.*[51] and the decision of the Ohio

---

[46] ECF # 203 at 6-9.

[47] ECF # 209 at 5-8.

[48] ECF # 211 at 6.

[49] ECF # 218 at 9.

[50] *Id.* at 7-8.

[51] *Norgard v. Brush Wellman, Inc.*, 95 Ohio St. 3d 165, 766 N.E.2d 977 (2002).

Court of Appeals for the Eighth District in *Kay v. Cleveland*.[52]  From my review of these precedents, I conclude that they provide colorable, although not ultimately persuasive, authority for the argument that Twee made in this case.

*Norgard* was decided by a four justice majority, with three justices dissenting.  The majority held that the applicable statute of limitations, Ohio Revised Code § 2305.10 (the same statute of limitations at issue here), is not triggered "until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the **wrongful conduct** of the defendant."[53]  The majority went on to emphasize that the "alerting event" is the discovery of defendant's wrongful conduct.[54]

The majority's reference to "discovery of the wrongful conduct" in isolation is somewhat ambiguous.  On one hand, it may be a reference to discovery of conduct of the defendant that the plaintiff ultimately alleges is wrongful in the complaint.  Here, that would be discovery of defendants' involvement with Twee's bottle supplier, which had occurred by 1998.  On the other hand, it could mean discovery of the specific facts relating to the defendants' acts or omissions that serve as the basis for liability.  In this case, that would be discovery of the facts that defendants performed inadequate or faulty investigation before recommending Freon 134a to Twee's bottle supplier.  From the facts of *Norgard* and some of the statements made by the majority therein, the latter interpretation is not far fetched.

---

[52] *Kay v. Cleveland*, No. 81099, 2003 WL 125280 (Ohio Ct. App., Jan. 16, 2003).

[53] *Norgard*, 95 Ohio St. 3d at 167, 766 N.E.2d at 979 (emphasis added).

[54] *Id.* at 168, 766 N.E.2d at 980.

-14-

The plaintiff in that case, David Norgard, sued his employer, Brush Wellman,  for injuries suffered by exposure to beryllium on the job.  By 1992, Norgard knew that exposure to beryllium on the job had caused his injury, and he amended his worker's compensation claim to reflect that diagnosis.[55]  In 1995 Norgard learned of some beryllium exposure cases filed against Brush Wellman by employees in Arizona.[56]  He contacted the attorney for those plaintiffs and was told that Brush Wellman had withheld information about the causes of beryllium-related diseases and the acceptable levels of beryllium to which an employee could be exposed without harm.[57]  This attorney also told Norgard that Brush Wellman knew that its air-sampling collections were faulty and inaccurate and that problems with respiratory equipment and ventilation may have unnecessarily elevated beryllium exposures.[58]  Within two years of receiving this information, Norgard filed an intentional-tort action against Brush Wellman.[59]

Brush Wellman filed a summary judgment motion based upon the statute of limitations in Revised Code § 2305.10.[60]  It argued that the statute began to run in 1992 when Norgard learned that he had contracted chronic beryllium disease in the workplace.[61]  The

---

[55] *Id.* at 165-66, 766 N.E.2d at 978.

[56] *Id.*

[57] *Id.* at 166, 766 N.E.2d at 979.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

-15-

trial court granted summary judgment, and the court of appeals affirmed.[62]  The Supreme

Court, however, reversed and remanded.[63]

In doing so, the majority drew the distinction between discovery that the defendant

was involved in the conduct that caused the injury and the discovery that the involvement

was "wrongful."[64]  This is indicated by the majority's discussion of its opinion in *Browning*

*v. Burt*.[65]  In that case, as discussed by the *Norgard* majority, the plaintiff brought a claim

against a doctor for malpractice in performing surgery and a claim of negligent credentialing

of the doctor against the hospital where the surgeries were performed.[66]  The Court held that

negligent credentialing and medical malpractice were separate claims, and the triggering

event for the statute of limitations was not necessarily the same for both.[67]  Even though a

plaintiff may have known as of a certain date that malpractice caused his injury and the

hospital had credentialed the doctor who committed that malpractice, he may have learned

at a later time the facts regarding the hospital's credentialing practices.  The "alerting event"

for each claim, therefore, may be different.[68]  Quoting from its *Browning* decision, the Court

restated:  "To hold otherwise would encourage baseless claims of negligence and

---

[62] *Id.*

[63] *Id.* at 167, 766 N.E.2d at 979.

[64] *Id.* at 167-68, 766 N.E.2d at 979.

[65] *Browning v. Burt*, 66 Ohio St. 3d 544, 613 N.E.2d 993 (1993).

[66] *Norgard*, 95 Ohio St. 3d at 167, 766 N.E.2d at 980.

[67] *Id.*

[68] *Id.*

credentialing and a hospital would be named in every lawsuit involving the malpractice of a physician."[69]  It is this concept that Twee sought to rely on in arguing that the alerting event for the claim against its bottle supplier was the discovery that the Freon in the bottles had caused the ruination of the wine but that the alerting event of the claim against the defendants was discovery that it had done inadequate or improper investigation before recommending the Freon to the bottle supplier.

The dissenters in *Norgard* expressed concern that the majority's opinion would "extend the discovery rule beyond the scope of its justification."[70]  Then Justice Cook, now a judge on the Sixth Circuit, cast the rule fashioned by the majority in terms that Twee here used in its argument:

> After today's decision, the statute of limitations will not begin to run until some unspecified time when the plaintiff determines that each element of an employer intentional-tort claim is present, notwithstanding that the plaintiff may already know that he or she has suffered an injury caused by the conduct of his or her employer.[71]

Justice Cook advocated instead an interpretation of the discovery rule consistent with the holding of the Supreme Court of the United States in *Rotella v. Wood*.[72]

> In implying a discovery accrual rule, we have been at pains to explain that discovery of the injury, **not discovery of the other elements of a claim**, is what starts the clock.
>
> ***

---

[69] *Id.* quoting *Browning*, 66 Ohio St. 3d at 561, 613 N.E.2d at 1006.

[70] *Norgard*, 95 Ohio St. 3d at 170-71, 766 N.E.2d at 982.

[71] *Id.* at 95 Ohio St. 3d at 170, 766 N.E.2d at 982.

[72] *Rotella v. Wood*, 528 U.S. 549 (2000).

The prospect is not so bleak for a plaintiff in possession of critical facts that he has been hurt and who has inflicted the injury.  He is no longer at the mercy of the latter.  There are others who can tell him if he has been wronged, and he need only ask.[73]

The Eighth District's opinion in *Kay v. Cleveland*[74] gives some credence to the interpretation of *Norgard* that Twee sought to advance here.  In *Kay*, the plaintiffs suffered water damage from flooding the day after the city repaired a water line in front of their home.[75]  The procedural history and the court's discussion of the interrelationship of several Ohio statutes are complex and not relevant to the discussion here.  Bottom line, the city moved for summary judgment on the ground that the relevant complaint in this case was filed more than two years after the plaintiffs discovered their injury and had knowledge that the city had been involved, through its repairs, in the flow of water that caused that injury.[76]  The plaintiffs countered that the triggering event took place over a year later when a plumbing contractor told them that the city had negligently repaired the water lines, causing the collapse of the sewer pipe and the flooding of their home.[77]  The trial court granted summary judgment in favor of the city.[78]

-------

[73] *Norgard*, 95 Ohio St. 3d at 170, 766 N.E.2d at 982 (Cook, J., dissenting) (emphasis in the original).

[74] *Kay*, 2003 WL 125280.

[75] *Id.*, at *1.

[76] *Id.*

[77] *Id.*

[78] *Id.*

The court of appeals reversed the summary judgment decision, finding a genuine issue of material fact regarding when the plaintiffs discovered or should have discovered the triggering event.[79]  Discussing *Norgard*, the court of appeals characterized its decision as "essentially establishing a new rule for determining when a statute of limitations begins to run in a case brought under R.C. 2305.10."[80]  In reliance on *Norgard*, the court found that a genuine issue of material fact existed as to when the plaintiffs "in the exercise of reasonable diligence should have discovered, that they were injured by the City's wrongful conduct."[81]  It summarized the relevant evidence in the following terms:

> During the hearing, testimony from Jerilyn Kay revealed that the day after the City began working in front of the house, one of the City's employees had come into the house, observed flooding, and told Jerilyn Kay there was a problem.  Jerilyn Kay then wrote down the worker's truck number, possibly indicating her anticipation that she might have to contact the city about the problem. This set of facts, however, does not conclusively establish anything beyond plaintiffs' knowledge that they were suffering damage to their personal property as the water came flooding into the house.  Like the plaintiff in *Norgard*, on April 17, 1999, plaintiffs did not yet know their damage was caused by the City's repair work.

> The record is also silent on when, in the exercise of due diligence, they should have discovered that the City might be responsible.  Reasonable minds could differ on when the two-year statute of limitations begins to run on their personal property claims.  Accordingly, because there remains a genuine issue of material fact, summary judgment cannot be granted.[82]

---

[79] *Id.* at *5-6.

[80] *Id.* at *4.

[81] *Id.* at *5.

[82] *Id.*

-19-

Here, Twee sought to bring itself within the interpretation of the discovery rule as applied in *Norgard* and *Kay*.  It argued that its knowledge that the defendants had consulted with the bottle supplier and had recommended Freon 134a, which Twee had gained by 1998, was not enough to trigger the statute.  The statute did not begin to run until 2002, when Twee received documents through the South African litigation that set out the basis for defendants' advice and exposed that the defendants gave that advice with improper or inadequate investigation.

Obviously, this argument did not carry the day, and both this Court and the Sixth Circuit held that the statute began to run in 1998.  Nevertheless, upon a close reading and analysis of the *Norgard* and *Kay* decisions, the argument that Twee advanced here was not so implausible as to be frivolous.  It cannot be said that, in pursuing the claim in the face of defendants' statute-of-limitations arguments, Twee's attorneys fell short of the obligations owed by members of the bar to the court.[83]  I cannot recommend sanctions on that basis.

The defendants' reply brief raises the argument that the facts upon which it relied in its motion for summary judgment should have come to light earlier in the discovery process, thereby protracting the proceedings in this case.[84]  Because I have concluded that Twee's argument in opposition to the statute-of-limitations defense was not frivolous and should not serve as the basis for sanctions, I need not address this contention.

---

[83] *Salkil*, 458 F.3d at 532.

[84] ECF # 224 at 6-9.

3.      **Claims of toxicity to humans**

Finally, defendants seek sanctions because "Twee's attorneys continued to pursue a baseless claim that the internal Freon 134a treatment was somehow 'toxic' or otherwise harmful to humans."[85]  Defendants represent that they took this claim seriously and incurred costs and expenses to defend against the claim.[86]

I have reviewed the record in this case and frankly find no claim asserted by Twee that the Freon 134a used in the bottling process was toxic to humans.  The complaint contains no such averment.[87]  Twee submitted two expert reports that made references to the effect of the Freon 134a on the yeast in the wine.  Additional comments in those reports about dangers or hazards of fluorides generally do not amount to accusations that Freon 134a, as used in Twee's process, created a health hazard for humans.  James Clark stated in his report: "There are numerous articles describing the adverse effects of high levels of fluoride on human health including thyroid problems, ... and cardiovascular problems."[88]  He does not

---

[85] ECF # 211 at 8.

[86] *Id.* at 11.

[87] ECF # 1.  Nor does such an averment appear in the proposed First Amended Complaint (ECF # 46, Attachment 1), which the Court subsequently denied leave to file. ECF # 60.  In a press release issued by Twee's counsel at the time of the filing of the complaint, counsel represented "HFC-134a is a safe product for approved applications, such as ... metered dose inhalers for anti-asthma drugs...."  ECF # 211, Attachment 13.  As to the effect of the chemical on Twee's product, the release stated "its [HFC-134a] use adversely effected [sic] wine bottles and rendered most of the 1994 vintage ... unmarketable."  *Id.*  This is not an indictment of HFC-134a, as used by Twee in its bottling process, as a human health hazard.

[88] ECF # 211, Attachment 15 at 3.

opine, however, that the Freon 134a as used by Twee created fluoride at levels sufficient to create a health hazard.  Richard Powell's report makes reference to the "toxicity of fluoride" and makes reference to the use of that chemical in pesticides, wood preservatives, adhesives, and disinfectants.[89]  Again, however, there is no statement or opinion that Freon 134a as used by Twee generated fluoride at levels harmful to human health.  Powell did not express an opinion in his report indicting the Freon 134a as used by Twee as a human health hazard.  This is not a case in which Twee was seeking indemnification for personal injury claims asserted by consumers of its products tainted by Freon 134a.[90]

In light of the absence of any pleading averments as to adverse effects of the Freon 134a as used by Twee on humans, and in the face of the isolated statements about high levels of fluorides (not Freon 134a) and possible effects on humans in two expert reports, I simply cannot conclude that Twee pursued a frivolous claim of toxicity to humans that warrants sanctions.

## Conclusion

Based on the foregoing, I conclude that defendants' motion for compensation was untimely and recommend that it be denied on that ground.  Alternatively, I conclude that Twee's argument in opposition to the statute-of-limitations defense was not frivolous and

---

[89] ECF # 211, Attachment 14 at 12.

[90] Defendants cite to communications among Twee, its attorneys, and the experts, both before and after the filing of the complaint, as evidence of a harm to humans claim. ECF # 211 at 8-11.  Regardless of what Twee and its team may have discussed or considered among themselves, this portion of the motion for sanctions must be determined based on the claims pled and the content of the reports submitted in support of the claims as pled.

that it did not pursue a claim that the Freon 134a as used in its process posed a health hazard to humans.  If the District Judge concludes that the motion was timely, I recommend its denial on the merits.

Dated:   December 18, 2007                              s/ William H. Baughman, Jr.
                                                                      United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[91]

---

[91] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).